

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

CASE No. 3:19CV358-J-39PDB

UNITED STATES OF AMERICA
ex rel. CHRISTOPHER IMPROTA;
AND PETER BRANDT,

    Plaintiffs,

v.

OCENTURE, LLC,
CARELUMINA, LLC,

    Defendants.

_____/

**FILED UNDER SEAL**
**JURY TRIAL DEMANDED**

## QUI TAM COMPLAINT

NOW COMES *Qui Tam* "Relators," Christopher Improta and Peter Brandt, by and through their counsel, Chapman Law Group, and brings this action on their own behalf and on behalf of the United States of America to recover civil damages and penalties against defendants, Ocenture, LLC (**Exhibit A: Ocenture, LLC, Articles of Organization**), and Carelumina, LLC (**Exhibit B: Carelumina, LLC, Articles of Organization**) (collectively "Defendants") arising out of violations of federal laws that included illegal kickbacks and violations of Medicare Conditions of Payment regulations. By knowingly submitting claims for reimbursement based on referrals generated through illegal remuneration, Defendants violated the False

1

Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the Federal Anti-Kickback Statute, 42 U.S.C 1320a-7b.

## OVERVIEW

1. Relators bring this action to recover treble damages and civil penalties under the FCA. Relators were approached about potential employment with Defendants, which is in the business of marketing and performing clinical laboratory services for genetic cancer screening.

2. During negotiation for employment, Relators discovered that Defendants have knowingly submitted thousands of false claims to the United States for reimbursement. Upon information and belief, these schemes have resulted in millions of dollars of waste and abuse of taxpayer funds.[1]

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

4. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in and transacts business that is the subject matter of this lawsuit in the Middle District of Florida.

---

[1] Defendants have represented that they perform an estimated ten-thousand (10,000) tests a month and are reimbursed between Five-Hundred Dollars ($500) to One-Thousand-Three-Hundred Dollars ($1,300) per service. The exact amount will be proved at trial.

5. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the acts complained of herein occur within the Middle District of Florida.

6. Pursuant to 31 U.S.C. § 3730, this Complaint is to be filed in court and remain under seal for a period of at least sixty (60) days, unless the Government requests an extension.

7. A copy of the complaint and written disclosure of substantially all material evidence and information the Relators possess shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure, setting forth and enclosing all material evidence and information that they possess, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

8. Relators have direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(4)(B), of the information on which the allegations set forth in this Complaint are based. Relators are the original source of, and have direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based and have voluntarily provided such information to the Government before filing this action.

## RELATOR

9. Relator Christopher Improta resides in the State of Florida and was approached by Defendants to work as an Independent Representative of Defendants

on or about January 28, 2019. (**Exhibit C: Carelumina Independent Representative Agreement & Compensation Plan**).

10. Relator Peter Brandt resides in the State of Florida and was approached by Defendants to work as an Independent Representative of Defendants on or about February 26, 2019.

11. Relators were approached by Defendants for employment as Independent Representatives of Defendants. In this capacity, Relators gained personal first-hand knowledge regarding the operations of Defendants. *See United States ex rel. Walker v. R & F Props. Of Lake County, Inc.*, 433 F.3d 1349, 1359-60 (11th Cir. 2005) (holding that a nurse practitioner who was employed at a practice and had personal knowledge and discussions with administrators regarding billing satisfied Fed. R. Civ. P. 9(b)).

## DEFENDANT

12. Defendant Ocenture, LLC, is a Florida limited liability company with a principal place of business as 6440 Southpoint Parkway, Suite 300, Jacksonville, Florida 32216. (**Exhibit D: 2019 Ocenture, LLC Annual Report**). Its registered agent is Fraser Burns, located at 6400 Southpoint Parkway, Suite 300, Jacksonville, Florida 32216. All individuals described above have knowledge of the activities identified herein and know or should have known that Defendant is falsely billing federal and state health care programs.

13. Defendant Carelumina, LLC, is a Florida limited liability company with a principal place of business as 6440 Southpoint Parkway, Suite 300, Jacksonville, Florida 32216. **(Exhibit E: 2019 Carelumina, LLC Annual Report)**. Defendant Carelumina, LLC, is a subsidiary of Defendant Ocenture, LLC. Its registered agent is Fraser Burns, located at 6400 Southpoint Parkway, Suite 300, Jacksonville, Florida 32216. All individuals described above have knowledge of the activities identified herein and know or should have known that Defendant is falsely billing federal and state health care programs.

## THE FALSE CLAIMS ACT

14. The FCA provides for the award of treble damages and civil penalties for, *inter alia*, knowingly causing the submission of false or fraudulent claims for payment to the United States government. 31 U.S.C. § 3729(a)(1).

15. The FCA provides, in pertinent part, that a person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and

> not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

16. For purposes of the FCA, the terms "knowing" and "knowingly" mean (i) actual knowledge; (ii) deliberate ignorance of the truth or falsity of the information; or (iii) reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Demonstrating that a person acted with knowledge does not require proof of specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

17. The FCA also provides relief from retaliatory actions. In pertinent part, the FCA provides:

> (1) In general. Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter [31 USCS §§ 3721 et seq.].
>
> (2) Relief. Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action

6

under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h).

18. False certification constitutes a false claim under the FCA, *see United States ex. rel Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224-29 (11th Cir. 2012), as do billing for services that not "reasonable and necessary for the diagnosis and treatment of illness or injury" or for non-reimbursable services.

19. Furthermore, as the FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim," non-compliance with the Anti-Kickback Statutes can form the basis for FCA liability. *See United States v. Baycare Health System*, No. 8:14-CV-73-T-23EAJ, 2015 WL 4878456, at *1 (M.D. Fla. Aug. 14, 2015) (citing *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005)).

## GOVERNMENT HEALTH CARE PROGRAMS

20. The Medicare Program ("Medicare") is a federally funded program that provides free, or below-cost health care benefits to certain individuals, primarily the elderly and disabled. The benefits available under Medicare are governed by federal statutes and regulations. The United States Department of Health and Human Services (HHS), through its agency, the Centers for Medicare and Medicaid Services

7

(CMS), oversees and administers Medicare. Individuals who received benefits under Medicare are commonly referred to as Medicare "beneficiaries."

21. Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

22. Providers are required by the Medicare regulations to ensure that any service provided are, in fact, medically necessary.

23. Medicare and other government programs only pay for those services that meet appropriate medical necessity standards. Medicare defines medical necessity as reasonable and necessary services. Providers may not bill for services that do not meet the applicable standards set by Medicare for medical necessity.

## THE ANTIKICKBACK STATUTE

24. Federal law and promulgated regulations governing the Medicare and Medicaid programs prohibits the paying or taking of kickbacks to health care providers. Specifically, the Anti-Kickback Statutes, 42 U.S.C. 1320a-7b, provides:

> (b) Illegal remunerations.
>
>> (1) Whoever knowingly and willfully solicits or receives [or offers or pays] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>>
>>> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

8

> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $ 100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(1)-(2).

25. The phrase "any remuneration" encompasses any kickback, bribe, or rebate, paid directly or indirectly, overtly or covertly, in cash or in kind. Any ownership interest or compensation relationship, as defined under the Stark Law, would also constitute remuneration as defined under the Anti-Kickback Statute, unless a safe harbor applies.

26. Knowing and willful conduct is a necessary element of this criminal offense. 42 U.S.C. § 1320a-7b(b)(1). An act is willful if "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law." *United States v. Starks*, 157 F.3d 833, 837-8 (11th Cir. 1998). However, a person does not need to know which statute they are violating, "'knowledge that conduct is unlawful is all that is required.'" *Id.* at 838 (quoting *Bryan v. United States*, 524 U.S. 184, 196 (1998).

27. The statute applies to any arrangement where *one* purpose of the remuneration was to obtain money for the referral of services or to induce further referrals, even if it was not the sole purpose. *United States v. Kats,* 871 F.2d 105 (9th Cir. 1989); *United States v. Greber,* 760 F.2d 68 (3d Cir.), *cert. denied,* 474 U.S. 988 (1985).

28. The regulations promulgated under this section defines certain "safe harbor" provisions, which if met are not subject to the Anti-Kickback Statute because such practices would unlikely result in fraud or abuse. *See* 42 C.F.R. § 1001.952. The "safe harbor" provisions set forth specific conditions which must be met in order to protect the entities involved from being prosecuted or sanctioned for the arrangement.

29. The "employment safe harbor" applies to "any amount paid by an employer to an employee ... for employment in the furnishing of any item or service for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs." 42 C.F.R. § 1001.952(i).

30. The "personal services safe harbor" applies to remuneration paid to an agent, when the following requirements are met: (A) the agreement is set out in writing and signed by the parties; (B) the agreement covers all of the services provided to the principal and specifies the services to be provided; (C) If for a periodic, sporadic, or part-time basis, the agreement specifies the schedules of such

intervals, their precise length, and the exact charges for such intervals; (D) the term of the agreement is for a minimum of one (1) year; (E) the aggregate compensation is set in advance and is consistent with fair market value in arms-length transactions and is not determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties; (F) the services to be provided do not involve counselling or promotion of a business arrangement or other activity in violation of any state or federal law; and (G) the aggregate services to be provided do not exceed those which are reasonably necessary to accomplish the commercially reasonable business purpose of the services. 42 C.F.R. § 1001.952(d).

## MEDICARE COVERAGE OF GENETIC CANCER SCREENING

31. Medicare will cover BRCA 1 and BRCA 2 genetic testing under specified circumstances; however, "testing of individuals with no personal history of breast, ovarian, fallopian tube, primary peritoneal, pancreatic, or prostate cancer" is not considered medically reasonable and necessary and "[s]uch testing is considered screening and is excluded by Medicare statute." (**EXHIBIT F: LCD BRCA1 AND BRCA2 GENETIC TESTING (L36499)**).

32. Medicare will cover genetic testing for Lynch Syndrome in beneficiaries "with colorectal and/or endometrial cancer suspected of" having Lynch Syndrome and with "at least three relatives with [colorectal cancer] or with a Lynch

Syndrome-associated cancer: endometrial, small bowel, ureter or renal pelvis cancer." **(Exhibit G: LCD Genetic Testing for Lynch Syndrome (L34912))**.

## THE FRAUD SCHEME

33. Defendants devised a scheme, by which it:

   a. Paid remuneration to physicians in return for referrals to Defendants, in violation of the Anti-Kickback Statute, specifically paying compensation that exceeded fair market value, were not commercially reasonable, and/or took into account the volume or value of the referrals or other business generated between the physician and Defendants;

   b. Paid Independent Representatives in return for referrals to Defendants, in violation of the Anti-Kickback Statute, specifically, paying compensation which exceeded fair market value and based off of the volume or value of the referrals or other business generated between the physician and Defendants;

   c. Offered services at "no cost" to "qualified" Medicare Part B beneficiaries; and

   d. Submitted and/or caused others to submit false and fraudulent claims for payment to Medicare, which included claims relating to clinical diagnostic laboratory services rendered to patients

who were referred to Defendants for remuneration by Independent Representatives and physicians based on the volume or value of the referrals or other business generated, which violated the Anti-Kickback Statute.

34. Defendant Carelumina employs Independent Representatives to Market genetic cancer screen diagnostic tests to Medicare Part B beneficiaries, at no cost to the beneficiaries. *See* Carelumina Opportunity Overview, *available at* https://www.youtube.com/watch?v=7Mv0hobV8zc&app=desktop, at 8:00 (last visited March 11, 2019).

35. Relators were approached about the opportunity to work as Independent Representatives for Defendants on or about February 5, 2019.

36. Independent Representatives receive compensation based on "Personal Sales from Direct Retail Customers or Preferred Customers," for an amount equal to sixty percent (60%) of the amount reimbursed, estimated to be between Three-Hundred Dollars ($300.00) and Seven-Hundred-Eighty Dollars ($780.00). Ex. C, at 7; *see also* Carelumina Opportunity Video, at 13:32.

37. Independent Representatives offer tests at "no cost to those who qualify," i.e., Medicare Part B beneficiaries. Carelumina Opportunity Video, at 5:28

38. Beneficiaries are qualified if the patient is a Medicare Part B Beneficiary, *id.* at 8:50, and if the patient has a history of cancer, if the patient has a

13

"1st degree relative[] with a history of cancer," defined as parents, sisters, brothers, or children, or a minimum of two "2nd & 3rd degree relatives with a history of cancer," defined as grandparents, uncles, aunts, nephews, nieces, grandchildren, great-grandparents, great-uncles, great-aunts, great grandchildren, and first cousins. *Id.* at 9:17.

39. Defendants informed Relators that once a patient is confirmed as qualified, the Independent Representative contacts a physician by telephone, not through a Medicare approved telehealth platform, to rely the information to a physician employed by a "Telehealth [platform owned by Ocenture, LLC] Dr. and complete this step," who orders the cancer screening. *Id.* at 6:58.

40. Per Florida law, in order for a physician to provide treatment recommendations, via electronic or other means, there must be: (A) a documented patient evaluation, including history and physical examination; (B) discussion between the physician and the patient regarding treatment options and the risks and benefits of treatment; and (C) maintenance of contemporaneous medical records which comply with Florida law. Fla. Admin. Code r. 64B8-9.0141(6).

41. Defendants would then submit claims for services provided to Medicare beneficiaries which are not considered medically reasonable and necessary and which were not ordered pursuant to a valid physician-patient relationship.

## COUNT I – VIOLATION OF 31 US.C. § 3729(a)(1) and (a)(1)(A)
(False Claims Act: Presentation of False Claims)

42. Relator realleges the allegations made in Paragraphs 1 through 41 set forth above.

43. This is a claim for treble damages and forfeitures under the FCA, 31 U.S.C. §§ 3729-32.

44. Through the acts described above, Defendants and their agents knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to the United States, false and fraudulent claims for payment or approval to the United States, including claims for reimbursement for designated health services rendered to patients who were referred through illegal remuneration to physicians and Independent Representatives in violation of the Anti-Kickback Statute.

45. Those false and fraudulent claims were presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

### COUNT II – VIOLATION OF 31 US.C. § 3729(a)(1)(B)
(False Claims Act: Using False Statements to Get False Claims Paid)

46. Relator realleges the allegations made in Paragraphs 1 through 45 set forth above.

47. This is a claim for treble damages and forfeiture under the FCA, 31 U.S.C. §§ 3729-32.

48. Defendants and their agents made, used, and caused to be made or used, false records or statements — *i.e.*, the false certifications and representations made and caused to be made by Defendant and its agents when submitting the false and fraudulent claims for payment to get those false and fraudulent claims paid and approved by the United States.

49. Defendants and their agents were made for the purpose of getting false and fraudulent claims paid, and payment of the false and fraudulent claims was a reasonable and foreseeable consequence of the Defendants and their agents' statements and actions.

50. The false certifications and representations made, used, and caused to be made or used by Defendants and their agents were material to the United States' payment of the false and fraudulent claims.

51. Those false and fraudulent claims were presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

### COUNT III – VIOLATION OF 31 US.C. § 3729(a)(7) and (a)(1)(G)
(False Claims Act: False Record Material to Obligation to Pay)

52. Relator realleges the allegations made in Paragraphs 1 through 51 set forth above.

53. This is a claim for treble damages and forfeiture under the FCA, 31 U.S.C. §§ 3729-32.

54. Defendants and their agents made, used, and caused to be made or used, false records or statements material to an obligation to pay or transmit money to the United States, or knowingly concealed, avoided, or decreased an obligation to pay or transmit to the United States.

55. Those false records or statements were made with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

WHEREFORE, Relators request that judgment be entered against Defendants, ordering: (1) Defendants to cease and desist from violating the FCA; (2) Defendants to pay an amount equal to three times the amount of damages the Government has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500 and not more than $11,000 for each violation of the FCA; (3) Defendants to pay actual damages in an amount to be determined at trial and injunctive relief enjoining Defendants from further acts of slander against Relators; (4) Relators be awarded all costs of this action, including attorneys' fees, expenses, and costs; and (5) any other relief as this Court deems just and proper.

|  |  |
|---|---|
| Dated: March 27, 2019 | Respectfully Submitted,<br>CHAPMAN LAW GROUP<br><br>*/s/ Ronald W. Chapman Sr.*<br>Ronald W. Chapman Sr., M.P.A., LL.M.<br>Florida Bar No. 646636<br>6841 Energy Court<br>Sarasota, FL 34240<br>(941) 893-3449<br>rchapman@chapmanlawgroup.com<br>*Attorney for Qui Tam Relator* |